Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence or to rehear the parties or their representatives, the Full Commission affirms with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On the date of the injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between Plaintiff and Defendant-Employer on September 10, 2002, the day of injury.
3. The Defendant, Wal-Mart Associates, Inc., was insured at all relevant times by American Home Assurance.
4. The alleged date of injury was September 10, 2002.
5. Plaintiff is claiming compensation for medical bills, chiropractic bills for treatment of Plaintiff's neck and left shoulder from September 10, 2002 to the present, compensation for temporary total disability from September 10, 2002 to May 13, 2003, permanent impairment to Plaintiff's neck and left shoulder, and future medical care for the neck and left shoulder.
6. Plaintiff continues to work for Defendant Wal-Mart.
7. The issues to be determined include: (a) whether Wal-Mart is obligated to pay for Plaintiff's chiropractic care from September 10, 2002 until the present, and if so, in what amount; (b) whether the injury to Plaintiff's left shoulder is compensable; and (c) whether the injury to Plaintiff's neck is compensable.
8. Documents stipulated into evidence include Stipulated Exhibit # 1, containing Plaintiff's medical records, including Duke University Health Systems medical records received by letter dated October 12, 2004, from attorney for the Plaintiff, Philip S. Adkins.
 * * * * * * * * * * *
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of hearing before the Deputy Commissioner, Plaintiff was fifty years old and had a high school education. Plaintiff is married and has two adult sons. Plaintiff began working for Defendant-Employer in May 1989. For the first seven years of her employment with the Defendant-Employer, Plaintiff worked in the fabrics and crafts department. For the last eight years up until the time of the hearing, Plaintiff had served as a manager of the domestic department. Her duties as manager included ordering merchandise, stocking and shelving merchandise such as blinds, rugs, comforters, blankets, sheets, pillows and towels, and placing the items on shelves up to seven feet in height. Bedding merchandise weighed up to approximately ten pounds and was very bulky.
2. When required to stock merchandise on an overhead shelf, Plaintiff would stand on a bottom shelf to reach the overhead shelf, as ladders were often unavailable. Plaintiff, who is 5'2" in height and left-handed, would use her left hand to stock merchandise.
3. As the department manager, Plaintiff stocked merchandise every day and had been doing so for eight to nine years. Plaintiff often stocked eight to nine pallets of merchandise per day. Plaintiff reached overhead on and off throughout the day, and would have to retrieve merchandise from overhead shelves.
4. In 1994, Plaintiff was involved in an automobile accident, as a result of which she suffered a herniated disc, which improved over time. Since this accident, Plaintiff has had intermittent problems in regards to her neck.
5. In April 2001, Plaintiff was seen at the Hillsborough Family Practice Associates complaining of neck and left shoulder problems. Plaintiff was placed on restrictions to lift no more than twenty pounds and was prescribed Flexeril and Darvocet.
6. In May 2001, Plaintiff, complaining of neck and shoulder pain, was seen by Dr. Daniel Crummett of the Hillsborough Family Practice Associates. In May 2001, Dr. Crummett prescribed physical therapy for Plaintiff and released her to work with restrictions of lifting no greater than fifteen pounds and no overhead activity. Dr. Crummett continued Plaintiff's treatment with Flexeril and Darvocet. Between April 2001 and April 2002, Plaintiff's neck condition improved.
7. In April 2002, Plaintiff, complaining of left shoulder pain, sought treatment with Dr. Karen Wilkinson-Bowers, a chiropractor. Plaintiff had been receiving chiropractic treatment from Dr. Wilkinson-Bowers since 1994 or 1995, following Plaintiff's motor vehicle accident. In April 2002, Dr. Bowers prescribed physical therapy, electrical stimulation, exercise, heat therapy, and massage treatments. Plaintiff's left shoulder condition failed to improve, however.
8. In July 2002, Plaintiff sought treatment with Dr. Crummett again, complaining of left shoulder pain. Dr. Crummett recommended an MRI, which was scheduled by Dr. Wilkinson-Bowers and completed on or about August 21, 2002. Based on the MRI results, Dr. Wilkinson-Bowers referred Plaintiff to Dr. Carl J. Basamania of Duke University Medical Center for treatment. Her first appointment was scheduled for October 4, 2002. Dr. Wilkinson-Bowers placed Plaintiff on restrictions including no overhead lifting with the left arm and provided Plaintiff with a written note regarding these restrictions. Plaintiff gave this note to her supervisor, Aysha Harris.
9. On September 10, 2002, Plaintiff was ordered by her supervisor to assemble a display case and stock the display shelves with merchandise. Two of Plaintiff's co-workers told the supervisor that Plaintiff was having difficulties that day, and the supervisor said she would send help for Plaintiff; however, no help arrived. Initially, Plaintiff arranged the display in a manner where she would not be required to do overhead lifting, but was later required to re-assemble the merchandise, necessitating overhead lifting. The supervisor indicated she would get someone to do the overhead lifting for Plaintiff, but this was not accomplished. Although ladders are available to stock merchandise, Plaintiff was unable to retrieve a ladder at the time.
10. On September 10, 2002, Plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with Defendant-Employer when she was attempting to pull an electric blanket off the top of an overhead shelf, and the shelf broke. Plaintiff reached up and grabbed the shelf with her left hand, but when she did, the shelf felt like it "ripped me in two." When she let the shelf go, everything came down and hit Plaintiff on the head, including a sign post and electric blanket. Before the shelf fell, Plaintiff did not have any pain in her neck, but did have pain in her left shoulder. After the shelf fell, Plaintiff felt pain in her head, neck and in her left shoulder. Plaintiff reported the incident to her supervisor and continued to work to the end of her shift.
11. On September 11, 2002, Plaintiff tried to go to work, but a supervisor, Yvonne Satterfield, insisted that Plaintiff go to the doctor. Defendant-Employer sent plaintiff to Hillsborough Family Practice Associates where x-rays were taken, and Plaintiff was referred to Triangle Orthopaedic Associates. Dr. Coin T. Page at Hillsborough Family Practice Associates took Plaintiff out of work.
12. On September 24, 2002, Plaintiff sought treatment at Triangle Orthopaedic Associates where she saw Physician's Assistant Sam Dyer ("P.A. Dyer") for complaints of neck and shoulder pain. P.A. Dyer works under the supervision of Dr. Peter Gilmer, a board certified orthopedic surgeon. Plaintiff's September 24, 2002 medical notes prepared by P.A. Dyer indicated that Dr. Crummett had treated Plaintiff for three or four weeks, and Dr. Crummett diagnosed Plaintiff with a partial tear of the rotator cuff tendon. The medical notes prepared by P.A. Dyer also indicated that Plaintiff was referred to Dr. Basamania at Duke for evaluation of the left shoulder.
13. Plaintiff's September 24, 2002 medical notes also indicated limited motion and tenderness in her neck. There was stiffness and impingement in the left shoulder, but her reflexes were intact. The main findings were restricted cervical motion.
14. As of September 24, 2002, P.A. Dyer reviewed the x-rays taken of the cervical spine at Hillsborough Family Practice Associates. The x-rays showed degenerative changes between C5 and C6 of the cervical spine bones and possible spondylosis.
15. On October 23, 2002, Dr. Gilmer examined Plaintiff and found she had a loss of normal range of motion in that Plaintiff had problems rotating her neck. Dr. Gilmer opined, and the Full Commission finds as fact, that Plaintiff's cervical spondylosis was aggravated by the injury at work on September 10, 2002, resulting in left upper extremity radicular symptoms.
16. Dr. Gilmer opined, and the Full Commission finds that a metal shelf falling onto Plaintiff's head in the manner described by Plaintiff could have and probably did exacerbate her pre-existing cervical spine problems. Dr. Gilmer based his opinion on Plaintiff's medical history of already having a herniation of C5-6 discs and Plaintiff's account of the September 10, 2002 injury.
17. Dr. Basamania, an Assistant Professor at Duke University Medical Center in the division of Orthopedic Surgery, a licensed physician of twenty years, and a board-certified physician of approximately fifteen years, first treated Plaintiff on October 4, 2002. Plaintiff's primary complaint at that time was of chronic left shoulder pain.
18. Dr. Basamania examined Plaintiff and reviewed the radiographs, which he found to be "unremarkable." He also reviewed Plaintiff's previous MRI of the shoulder, which showed a SLAP lesion and evidence of possible rotator cuff tendonitis, with no full thickness tear noted. The MRI of Plaintiff's cervical spine showed a disc bulge at the C5-6 level. At the time of his examination, Dr. Basamania did not know Plaintiff had sustained a new injury to her shoulder and neck on September 10, 2002. His examination findings caused him to suspect a rotator cuff tear, but "the MRI just showed inflammation, but no frank tearing." Based on the MRI, Dr. Basamania did not think Plaintiff had a full thickness tear, which is a tear in the rotator cuff that goes completely through the tendon so the tendon is actually partially detached or completely detached. Based on the MRI, he thought Plaintiff mostly had inflammation. He planned to put a fiber optic device inside the shoulder and do a complete exam and if the rotator cuff was torn, go ahead and repair it or clean it up through a process call debridement.
19. Dr. Basamania performed the operative procedure on Plaintiff on December 2, 2002. He used the diagnostic arthroscopic approach first. The arthroscopic exam showed "a lot of inflammation" and a full thickness tear which surprised Dr. Basamania because he was not expecting to see a full thickness tear in someone as young as Plaintiff. He testified that usually the only time he sees a tear in someone Plaintiff's age is due to a specific traumatic event, or the person does repeated overhead work such as carpenters and electricians. Plaintiff had so much inflammation that Dr. Basamania was concerned that she may have an autoimmune disease where the body attacks its own parts. Because Plaintiff had a full thickness tear of her rotator cuff, Dr. Basamania had to proceed to an open procedure where he made a large incision, rather than a small incision over the outside of the shoulder which he had contemplated.
20. Dr. Basamania was of the opinion that Plaintiff did not have a full thickness tear when the MRI prior to the injury was done, since such tears can usually be seen on MRI.
21. Dr. Basamania testified that just holding your hand up in an overhead position puts stress on the fibers of the rotator cuff, and if you add extra stress by pushing or pulling something and if those fibers are already weakened from chronic irritation, you can have an event where there is a complete tear. Usually patients describe the complete tear event as one of pain and "giving way."
22. Dr. Basamania further opined and the Full Commission finds that Plaintiff, more likely than not, completed the tear of her rotator cuff while lifting the shelf at Wal-Mart on September 10, 2002.
23. Dr. Basamania testified that because of the severity of symptoms and the fact that Plaintiff's shoulder problems had persisted beyond six months he would have performed an arthroscopy even if he had known of Plaintiff's new injury on September 10, 2002; however, he had to assume that something happened since the MRI to cause the full thickness tear because an MRI is usually pretty accurate for full thickness tears.
24. Dr. Basamania was also of the opinion that Plaintiff's involvement in a "a motor vehicle accident sometime prior," which initiated her complaints of neck and shoulder pain, "possibly," but did not likely cause her rotator cuff tear.
25. Dr. Basamania further described why he thinks it was more likely that the complete tear occurred as result of the falling shelf incident as follows:
 But the fact that she had her arm in what we call a provocative position . . . she was loading it. By loading it I mean she was applying a load to the muscles of the rotator cuff and that's classically when you'll see a tear occurring.
26. As a result of the injury by accident of September 10, 2002, Dr. Basamania is of the opinion that Plaintiff sustained at least a ten percent (10%) permanent partial disability to her left shoulder; however, the disability rating may be higher depending upon whether Plaintiff fails to recover her full motion of flexion. Dr. Basamania was not ready to rate Plaintiff's permanent partial impairment to her shoulder as of the date of his deposition on October 26, 2004.
27. Plaintiff's medical treatment following the injury by accident of September 10, 2002, including her need for surgery, was causally related to the injury by accident of September 10, 2002.
28. According to the Form 18 filed April 30, 2003, Plaintiff's average weekly wage was $472.40 at the time of injury. There is not a Form 22 or Form 60 in the record, or any other wage information; therefore, the Full Commission finds that Plaintiff's average weekly wage is as stated on the Form 18, which is $472.40, yielding a compensation rate of $314.95.
29. Plaintiff returned to work for Wal-Mart on May 13, 2003, at regular duty, earning her pre-injury wages.
30. Since returning to work, Plaintiff has had some difficulties with overhead lifting, trouble with her neck, stiffness, muscle spasms in both shoulders near the base of her neck, trouble turning her head from right to left, headaches, intermittent numbness in her left arm, and swelling under her left arm. Plaintiff can lift her left arm approximately ninety-five degrees without assistance, but must use her right arm to lift her left arm to a position greater than ninety-five degrees. When requested by Plaintiff, she receives assistance with lifting while at work.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. On September 10, 2002, Plaintiff sustained a compensable injury by accident to her head, neck and left shoulder arising out of and in the course of her employment with the Defendant-Employer. N.C. Gen. Stat. §97-2(6).
2. The injury by accident of September 10, 2002, aggravated a pre-existing condition and is compensable under the North Carolina Workers' Compensation Act. Smith v. Champion Int'l, 134 N.C. App. 180,182, 517 S.E.2d 164, 166 (1999).
3. Plaintiff's average weekly wage is $472.40, yielding a compensation rate of $314.95. N.C. Gen. Stat. § 97-2(5).
4. As a result of her head, neck and shoulder injury of September 10, 2002, Plaintiff was not capable of earning wages in any employment from September 11, 2002 through May 12, 2003. Plaintiff is therefore entitled to temporary total disability compensation at the rate of $314.95 for the time period from September 11, 2002 through May 12, 2003. N.C. Gen. Stat. §§ 97-2(9); 97-29.
5. Defendants are obligated to pay for all of Plaintiff's reasonably required medical treatment resulting from her injury by accident of September 10, 2002, including but not limited to, the chiropractic treatment with Dr. Crummett associated with treatment for the September 10, 2002 compensable injury, for so long as such treatment is necessary to effect a cure, provide relief and/or lessen her period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
6. Dr. Basamania would have performed surgery on Plaintiff based on the MRI findings and the duration of her shoulder symptoms even if she had not sustained a new injury on September 10, 2002. The September 10, 2002 accident, however, caused a complete rotator cuff tear requiring more extensive surgery. The Full Commission is unable to apportion the costs of the surgery between damage due to her pre-existing condition and her work related injury. A work related aggravation of a pre-existing condition is compensable. Id. Defendant is responsible for payment of the full cost of the surgery by Dr. Basamania.
 * * * * * * * * * * *
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to Plaintiff temporary total disability compensation at the rate of $314.95 per week from September 11, 2002 through May 12, 2003, subject to an attorney fee awarded herein. Said compensation has accrued and shall be paid to Plaintiff in one lump sum.
2. A final determination of the amount of permanent partial disability, if any, to which the Plaintiff may be entitled is reserved.
3. Defendants shall pay all expenses for Plaintiff's reasonably required medical and chiropractic treatment to her head, neck and left shoulder from September 11, 2002 through May 12, 2003, that resulted from her compensable injury by accident of September 10, 2002, when bills for the same have been approved according to procedures approved by the Industrial Commission.
4. Defendants shall pay future expenses for Plaintiff's reasonably required medical treatment for her compensable head, neck and left shoulder injuries, for treatments, examinations and evaluations tending to effect a cure, provide relief or to lessen her period of disability. Defendants are obligated to pay for the surgery by Dr. Basamania and for all other treatment by Dr. Basamania.
5. An attorney fee of twenty-five percent (25%) of the compensation awarded Plaintiff in Paragraph 1 of this AWARD is approved for Plaintiff's counsel and shall be deducted from the amount due Plaintiff and paid directly to Plaintiff's counsel.
6. Defendants shall pay the costs of this action.
This the __ day of March 2006.
 S/____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_________________ CHRISTOPHER SCOTT COMMISSIONER
 S/_________________ PAMELA T. YOUNG COMMISSIONER